IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARCIO DE OLIVEIRA PETITIONER

v. Case No. 5:09-CR-50035

UNITED STATES OF AMERICA RESPONDENT

**OPINION AND ORDER**

Now pending before the Court is the Report and Recommendation ("R&R") (Doc. 128) of the Honorable Erin L. Setser, Magistrate Judge for the Western District of Arkansas. The Government has filed objections (Doc. 130), and Petitioner Marcio De Oliveira has filed a response (Doc. 131). The Magistrate's R&R concerns Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 68), filed pursuant to 28 U.S.C. § 2255. In light of the Government's objections to the R&R, the Court has conducted a thorough *de novo* review of the record, focusing in particular on the portions of the R&R to which specific objections have been made, in accordance with 28 U.S.C.§ 636(b)(1)(C). After review, the Court finds that the objections lodged by the Government offer neither law nor fact requiring departure from the Magistrate's findings. Accordingly, the Magistrate's R&R (Doc. 128) is ADOPTED, the Motion to Vacate (Doc. 68) is GRANTED, De Oliveira's guilty plea and sentence are VACATED, and the matter will be set for jury trial by separate order.

## I. Background

On April 22, 2009, De Oliveira was charged with four counts of aiding and abetting others in knowingly concealing, harboring, and shielding an alien from detection for the

purpose of commercial advantage or private financial gain, "in reckless disregard of the fact" that the alien had come to, entered, and remained in the United States illegally, all in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). (Doc. 13). De Oliveira was scheduled for trial to commence on Monday, August 31, 2009; however, on Friday, August 28, 2009, De Oliveira entered into a plea agreement (Doc. 23) wherein he agreed to plead guilty to two of the four counts in the Indictment.[1]

An essential element of the offense of harboring an illegal alien is knowledge of the alien's undocumented status. In other words, to violate 8 U.S.C. § 1324(a)(1)(A)(iii), one must either *know* that the individual who is being concealed or harbored is, in fact, an illegal alien, or one must *recklessly disregard* the fact of the alien's unlawful presence. 8 U.S.C. § 1324(a)(1)(A)(iii); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008) (evidence was sufficient to support convictions for harboring illegal aliens when jury could "conclude that the [defendants] knew or recklessly disregarded the fact that the aliens were unlawfully in the country"). When De Oliveira appeared with his retained counsel, Herbert Southern, at the change of plea hearing, the Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas, pointed out that the facts recited in the plea agreement indicated De Oliveira's knowledge that the workers were "foreign nationals"—not illegal aliens (Doc. 49, p. 13). Judge Hendren noted this discrepancy in open court and asked De Oliveira, "And you knew [the individuals named in the Indictment] were here illegally?" To which De Oliveira clearly responded, "No." *Id.*

The record indicates that at that point in the proceedings, De Oliveira's counsel, Mr.

[1] Each of the four counts named a different illegal alien who was allegedly "harbored" by De Oliveira contrary to law.

Southern, began questioning his client directly on the issue of what his client knew:

Mr. Southern: Well, you did know that you *didn't have verification* that they were legal, and you hadn't—

De Oliveira: Yes.

Mr. Southern: —*pursued to*—

De Oliveira: Yeah.

Mr. Southern: —*ascertain*—

De Oliveira: Yeah.

Mr. Southern: So it's reasonable to say that you did know, *or should have known*, that they were illegals; is that correct?

De Oliveira: That is correct.

(Doc. 49, pp. 13-14) (emphasis added).

Directly after this exchange, Judge Hendren interjected, "I don't think it's a crime to harbor foreign nationals. I think it's a crime to harbor if they're illegal aliens, and I don't want there to be any question about that. Do you concede, Mr. Southern, that he admits on the record he knew they were illegal aliens?" *Id.* at p. 14. At that point, Mr. Southern then responded, "Yes, Your Honor, I do," and De Oliveira followed with, "Yes, sir." *Id.*

The Magistrate observed correctly in her R&R that Mr. Southern wrongly articulated to his client the knowledge element required to prove the offense to which De Oliveira pleaded guilty. This misadvice is obvious and present on the record. Instead of asking De Oliveira whether he actually knew or recklessly disregarded the fact that the aliens named in the Indictment were present in the United States illegally, Mr. Southern lowered the knowledge burden to a "knew-or-should-have-known" standard.

Mr. Southern's misunderstanding of the knowledge element of the offense was further demonstrated when it came time to file objections to the Presentence Report prior to sentencing. In one of those objections, Mr. Southern claimed that De Oliveira "pled guilty at the hearing to the fact that he *should have ensured* the status of the workers but did not," (Doc. 128, p. 4) (emphasis added), which, once again, is not the correct knowledge standard required to prove a violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

At some point between the time Mr. Southern filed objections to the Presentence Report and the date of sentencing, De Oliveira secured new counsel. On January 27, 2010, de Oliveira's new counsel moved the Court to allow De Oliveira to withdraw his guilty plea, arguing that the plea was entered on the basis of Mr. Southern's incorrect advice about the advisability of pleading guilty in light of De Oliveira's insistence that he did not know that the workers named in the Indictment were unlawfully present. De Oliveira lived in Tennessee at the time of the offense conduct and claimed that others had prepared or reviewed all employment paperwork "and told defendant that these persons [were] cleared to work." (Doc. 27, pp. 2-6). Ultimately, Judge Hendren refused to allow De Oliveira to withdraw his guilty plea, relying on the fact that De Oliveira "admitted under oath in front of this Court that he knew that these were illegal aliens . . . ." (Doc. 78, p. 74). The Probation Officer assigned to the case noted that De Oliveira never accepted responsibility for the crime, and as a result, when De Oliveira was sentenced, he was denied a reduction for acceptance of responsibility. Judge Hendren sentenced him to 51 months imprisonment on each of the two counts, to run concurrently, a sentence which De Oliveira promptly appealed.

The Court of Appeals affirmed Judge Hendren's decision to deny De Oliveira's

motion to withdraw his guilty plea, but reversed and remanded the case for resentencing due to the improper application of an enhancement. The Eighth Circuit reviewed the denial of the withdrawal of the guilty plea for abuse of discretion only, finding that "De Oliveira admitted under oath all of the factual elements of each crime and testified that his guilty pleas were voluntary and that he was satisfied with Southern's representation." *United States v. De Oliveira*, 623 F.3d 593, 597 (8th Cir. 2010). Applying the deferential standard of review mentioned above, the appeals court found "no error in the district court's decision." *Id.*

After the Court of Appeals' mandate was issued, De Oliveira was re-sentenced in this Court on February 14, 2011, to 33 months imprisonment on each count, with both counts to run concurrently. On March 1, 2012, the instant Motion to Vacate was filed, advancing two grounds for ineffective assistance of counsel: (1) misadvice as to the knowledge standard, which De Oliveira contends drove his decision to plead guilty rather than go to trial; and (2) misadvice as to the deportation consequences of the guilty plea.

De Oliveira is a permanent resident of the United States, not a citizen. As of today's date, he has fully served the 33-month term of imprisonment imposed on re-sentencing and is currently being held in an Immigration and Customs Enforcement detention facility in Louisiana, awaiting the decision of this Court on the Motion to Vacate.

The record reflects that the Magistrate conducted a three-day evidentiary hearing on the Motion to Vacate in which she heard from various witnesses, including Mr. Southern and his wife, De Oliveira's former wife and former sister-in-law, and De Oliveira himself. The Magistrate admitted evidence and developed a two-volume transcript of the proceedings. During the course of the hearing, Mr. Southern admitted two crucial things

under oath that are material to the § 2255 inquiry: (1) that prior to the change of plea hearing, De Oliveira had never before admitted that he knew the workers in question were illegal immigrants, and (2) that during the change of plea hearing, Mr. Southern misadvised De Oliveira as to the knowledge element of the crime.

Under direct questioning by the Magistrate, Mr. Southern admitted under oath that not only did he give misadvice as to the knowledge standard, he agreed this misadvice could have formed the basis for De Oliveira's guilty plea:

| | |
|---|---|
| Court: | What Judge Hendren was trying to get at was whether he admitted knowledge that these aliens were illegal. |
| Mr. Southern: | Correct. |
| Court: | So your question to Mr. De Oliveira, is it, "So it's reasonable to say that you did know, or should have known, that they were illegals. Is that correct," was that a misstatement of the knowledge element? |
| Mr. Southern: | I think it is. |
| Court: | Okay. So could his answer "Yes, I knew" have been inaccurate because your question was inaccurate? |
| Mr. Southern: | It could have. |

(Doc. 127, p. 263).

Other testimony during the Magistrate's three-day hearing confirms that Mr. Southern gave this crucial misadvice as to the element of knowledge required for the crime during the time De Oliveira was deciding whether or not to plead guilty. According to De Oliveira's former wife, Mr. Southern told De Oliveira and his family that the knowledge

element of the offense was "should have known" —which is plainly incorrect. *Id.* at p. 539. And, consistent with that testimony, De Oliveira's former sister-in-law testified that Mr. Southern gave advice just prior to the change of plea hearing that De Oliveira could be found guilty if he "could have been more careful with the paperwork"—which is also an incorrect statement of the knowledge element. *Id.* at p. 551.

The Magistrate concluded that the two-part *Strickland v. Washington* test, 466 U.S. 668 (1984), which the district court is to apply when a guilty plea is challenged in a § 2255 motion due to ineffective assistance of counsel, is satisfied in De Oliveira's case with regard to Mr. Southern's misadvice on the knowledge element.[2] As to the first part of the test, which goes to counsel's performance, it was evident to the Magistrate from a thorough review of the record and from testimony gathered during the three-day hearing that Mr. Southern's representation fell below an objective standard of reasonableness. As to the second part of the test, which goes to whether counsel's performance prejudiced the defendant, in the Magistrate's view, De Oliveira demonstrated that the outcome of the plea process would have been entirely different with competent legal advice. In short, De Oliveira would have maintained his not-guilty plea and proceeded to trial if not for counsel's ineffective assistance.

## II. Government's Objections to the R&R

The Government brings two objections in response to the Magistrate's R&R. First, the Government argues that De Oliveira had a full and fair opportunity to litigate and

---

[2] The Magistrate found it unnecessary to address De Oliveira's argument that Mr. Southern also advised him improperly with regard to the deportation consequences of the guilty plea. The R&R concludes that counsel's misadvice regarding the knowledge element alone was sufficient to justify granting the Motion to Vacate.

actually did litigate the issue of ineffective assistance of counsel as it related to his guilty plea, both before Judge Hendren and later on appeal. Therefore, according to the Government, the issue now before the Court on Defendant's Motion to Vacate has already been decided and rejected, and cannot be revisited. Second, the Government argues that De Oliveira was not prejudiced by any misadvice as to the knowledge element of the offense because Judge Hendren correctly articulated the knowledge element and so advised De Oliveira at the change of plea hearing, and further, De Oliveira admitted under oath that he knew that the persons being harbored were, in fact, illegal immigrants.

**A. Objection 1: De Oliveira's claim of ineffective assistance was either decided on appeal or, in the alternative, was not sufficiently raised on appeal and is now procedurally defaulted.**

The Government advances two contradictory arguments in the context of its first objection. First, it argues that De Oliveira should be foreclosed from arguing that his counsel's misadvice at and prior to the change of plea justifies vacating his guilty plea in the context of a § 2255 motion, since the issue of ineffective assistance was allegedly "raised and resolved on direct appeal." (Doc. 130, p. 10).

Contrary to the Government's contention, the Eighth Circuit did not substantively analyze whether Mr. Southern gave De Oliveira incorrect legal advice as to the knowledge element of the crime with which he was charged or whether that misadvice influenced De Oliveira's decision to plead guilty. Instead, the Court of Appeals focused on the transcript of the change of plea hearing and observed that De Oliveira admitted on the record, after prompting from the Court and from Mr. Southern, that he knew that the workers named in the Indictment were illegal aliens.

In denying De Oliveira's claim on appeal that the district court abused its discretion

in refusing to allow him to withdraw his guilty plea, the Court of Appeals explicitly acknowledged that there was a lack of factual development in the district court record as to De Oliveira's claim of ineffective assistance. Rather than inquire into the merits of De Oliveira's ineffective-assistance claims, the appeals court simply examined the district court record before Judge Hendren and found that, at the time the Motion to Withdraw the Guilty Plea was made to the district court, "De Oliveira failed to demonstrate a fair and just reason to withdraw his guilty pleas because he did not substantiate his claims of deficient counsel." *De Oliveira*, 623 F.3d at 597. It is clear, therefore, that the issues raised in the Magistrate's R&R on the Motion to Vacate were not substantively decided by the Eighth Circuit on direct appeal.

Second, with respect to the Government's alternate—or, better stated, contradictory—argument within the context of its first objection, the Government contends that if, hypothetically, this Court were to determine that De Oliveira's ineffective-assistance claim as to his counsel's misadvice were not substantively considered on direct appeal, it is too late now for De Oliveira to argue ineffective assistance because that claim should have been made on direct appeal and now must be considered "procedurally defaulted." (Doc. 130, p. 12). As explained in further detail below, not only is this argument illogical, but it also misstates the law on procedural default with respect to ineffective-assistance claims.

The Eighth Circuit considers ineffective-assistance claims to be "best litigated" in § 2255 proceedings. *United States v. Davis*, 583 F.3d 1081, 1091 (8th Cir. 2009), *cert. denied*, 559 U.S. 958 (2010). As for whether ineffective-assistance claims may be procedurally defaulted if not addressed on direct appeal, the Supreme Court has held that

"in most cases, a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

As explained previously, it is evident from reviewing the opinion of the Court of Appeals that it did not substantively decide De Oliveira's ineffective-assistance claim. Instead, the appeals court considered whether the evidence before the district court at the time of the change of plea was sufficient to deny De Oliveira's request to withdraw his plea then. In any event, even if a specific ineffective-assistance claim could have been brought on direct appeal, but was not brought, the Supreme Court has determined—contrary to the Government's position—that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, *whether or not the petitioner could have raised the claim on direct appeal*." *Id.* (emphasis added); *see also United States v. Kottke*, 138 Fed. Appx. 864, 866 (8th Cir. 2005) (per curiam) (noting the court's "oft repeated refrain" that it will decline to address claims of ineffective assistance of counsel on direct appeal "because they are more appropriately raised in a collateral proceeding under 28 U.S.C. § 2255, where a better factual record can be developed").

In light of the above reasoning, the Government's first objection is overruled.

**B. Objection 2: De Oliveira did not suffer prejudice due to any misadvice as to the knowledge element of the crime.**

In this second objection, the Government contends that even if De Oliveira's attorney misadvised him as to the knowledge element of the offense, Judge Hendren cured

any deficiency by articulating the correct standard during the course of the plea hearing. The Court disagrees that counsel's error was cured. Evidence introduced at the Magistrate's evidentiary hearing indicates that De Oliveira was misadvised by Mr. Southern not only during the change of plea hearing, but on multiple occasions leading up to the change of plea. Furthermore, although Judge Hendren did attempt to clarify at the hearing whether De Oliveira actually knew that the individuals named in the Indictment were illegal aliens, in the middle of Judge Hendren's questioning, Mr. Southern jumped in and *reinforced* to his client the same misadvice he had been giving him prior to the hearing and upon which De Oliveira relied in deciding that he should change his plea to guilty.

The Government also brings up the fact that De Oliveira acknowledged that he read his plea agreement thoroughly and signed it voluntarily. This fact is of no consequence to the prejudice analysis under *Strickland*, as the plea agreement on its face failed to state facts indicating De Oliveira actually knew that the aliens in question were illegal. This defect in the fact section of the plea agreement was seized upon by Judge Hendren, who during the change of plea hearing inquired specifically whether De Oliveira knew that the workers were present illegally, rather than being "foreign nationals."

The Court cannot find that De Oliveira's guilty plea was a knowing plea, as it was premised on his attorney's incorrect advice as to what it meant to be guilty of the crimes charged. In laboring under his counsel's misadvice, De Oliveira believed that if he were found to have been careless in failing to verify the employment documents of the workers in question, or if it could otherwise be determined that he "should have known" the workers were present illegally, he would be found guilty of harboring illegal aliens.

Finally, with respect to the Government's argument that proceeding to trial would not

have been an objectively reasonable decision for De Oliveira, "as there is more than sufficient evidence to support that De Oliveira had acted with knowing or reckless disregard of the fact that the aliens were in the United States illegally" (Doc. 130, p. 38), the Court disagrees. All De Oliveira must demonstrate at this stage in the proceedings is that he would not have pleaded guilty and would have insisted on going to trial but for his counsel's misadvice. As the Magistrate recited in her R&R, "Defendant maintained his innocence and denied having knowledge of the workers being illegal from the initial phases of his case; at the plea hearing (until prompted to admit knowledge by Mr. Southern); in his motion to withdraw his plea; and even during the sentencing phase when he was interviewed by the probation office, which resulted in him being denied acceptance of responsibility . . . ." (Doc. 128, p. 14). The Court, having reviewed the record *de novo*, agrees with the Magistrate's assessment and, moreover, finds that De Oliveira had a plausible defense to the charges against him primarily because of his professed lack of knowledge and alleged detachment from the process of hiring the workers in question and verifying their immigration status.

With the benefit of the detailed factual record developed by the Magistrate covering, in particular, the time leading up to De Oliveira's change of plea, the Court finds that the prejudice prong of the *Strickland* test is satisfied. 466 U.S. at 687. The Government's second objection is overruled.

## III. Conclusion

**IT IS HEREBY ORDERED** that the Report and Recommendation (Doc. 128) of the Magistrate Judge is **ADOPTED**, the Motion to Vacate (Doc. 68) is **GRANTED**, the Defendant's guilty plea and sentence are **VACATED**, and the matter will be set for jury trial

by separate order.

IT IS SO ORDERED this 24th day of June, 2014.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE